UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Criminal Action No. 3:16-CR-011-CHB |
| v. | ) ) | |
| DENNIS AMMONS, | ) ) ) | **OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Dennis Ammons' Motion and Supporting Memorandum for Judgment of Acquittal [R. 117; R. 131] A jury found Ammons guilty of knowingly accessing, with the intent to view, material that contained child pornography, Count 2 of the Superseding Indictment, in violation of 18 U.S.C. § 2252A(a)(5)(B). [R. 67; R. 111] For the reasons stated below, the Court **DENIES** the Defendant's Motion.

**I.    Background**

In December, 2015, the FBI conducted a search of the home where Ammons lived with his sister and, at times, two minor nieces. They seized numerous computer hard drives, flash media, and other devices. Examination of the items revealed child pornography contained in the "cache" area of some of the items, and also demonstrated that someone with the user name "damm0" conducted internet searches for sites known to contain child pornography. None of the items seized contained saved files or images of child pornography. During the search, FBI agents interviewed Ammons who made incriminating statements about his on-line activities.

Following the close of the United States' case, and again at the conclusion of all evidence, the Defendant made a motion to direct a verdict of acquittal under Fed. R. Crim. P. 29, alleging there was insufficient evidence introduced at trial to support a conviction as a matter of law. [R 125, Tr., (Vol. 2), at Page ID #: 1080-81] He then filed the instant motion 14 days after trial.

## II. Discussion

"A defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010). When deciding a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the prosecution and determine whether there was sufficient evidence offered at trial to convince a rational trier of fact beyond a reasonable doubt that all the elements of the charged crimes have been established. *Id.* The evidence "need *not* remove every reasonable hypothesis except that of guilt." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007) (quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984)) (emphasis in original). The Court must give the prosecution "the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004). The Court must not weigh the evidence, consider witness credibility, or substitute its judgment for that of the jury. *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002).

Section § 2252A makes it a crime to:

> …knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. . . .

18 U.S.C. § 2252A(a)(5)(B). In order to convict Ammons under this statute, the United States had to prove:

> (A) First: That the defendant knowingly accessed with intent to view any material that contained an image of child pornography;
>
> (B) Second: That the defendant knew that the material contained child pornography; and
>
> (C) Third: The image of child pornography was shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

*See* Sixth Circuit Pattern Jury Instructions ("Jury Instructions") [R. 110, at No. 12, p. 15] The Court will not disturb the conviction under this statute unless no rational trier of fact could have found proof of guilt beyond a reasonable doubt as to each element.

In his Motion and Memorandum in Support, Ammons argues that the United States failed to establish beyond a reasonable doubt that Defendant "knowingly accessed with intent to view the images of child pornography," the first element of the charged crime. [R. 131, p. 7] Distilled, Defendant argues that because all the images of child pornography were contained in the Google Chrome web browser cache (rather than as saved images or files), it is possible that these images were populated in Ammons' cache without him ever having viewed illegal material or visiting illegal sites. *Id.* at pp. 7-8.

To understand Ammons' argument fully, some technical information is required. Cache is the location on a computer's drive used by a web browser such as Google Chrome or Internet Explorer for the local saving of web pages or web activity visited when a user is browsing the internet. [R. 131, at p. 2] (citing [R. 125, Tr., (Vol. 2), at Page ID #: 1045-46]). When a person accesses a website using a web browser (such as Google Chrome), everything on the web page is stored in the browser cache even if the person never actually views it. This is so because web

sites can be larger than the part that can be displayed on a computer monitor screen at any one time. To see the entire web page, the user must scroll down to see all its content. [R. 125, Tr., (Vol. 2), at Page ID #: 1066-67] Also, a browser mechanism known as "pre-fetching" can download into cache other documents, images and data from another site that is not then being viewed in anticipation that the user might want to visit that other site by clicking on the link. Even if the user never clicks on the link to the other page, images and data from the unvisited site may be placed in the cache by the browser. *Id.* at Page ID #: 1067. Ammons argues that because of pre-fetching and the fact that all the child pornography images were located in the web browser cache, there was insufficient evidence that he viewed illegal images or visited illegal websites.

Viewing all the evidence in the light most favorable to the prosecution, the Court finds that a rational trier of fact could reject Defendant's theory and conclude Ammons was guilty beyond a reasonable doubt. *Graham*, 622 F.3d at 448. First, the Sixth Circuit recently made clear that 18 U.S.C. § 2252A(a)(5)(B) "does not require a showing that [a defendant] actually viewed illegal content on the site. The access-with-intent offense is complete the moment that the elements of access and intent coincide." *United States v. Tagg*, 996 F.3d 579, 587 (6th Cir. 2018). There, the Sixth Circuit reversed an order granting a motion to suppress digital evidence where the forensic examination demonstrated the defendant had spent hours on a website called "Playpen" that "obviously contained child pornography." *Id.* at 582. The Sixth Circuit found that "even if the person never viewed illegal child pornography, knowingly accessing a child-pornography website with the intent to view illegal materials is itself a criminal act." *Id.* at 587. The court reasoned that:

> This is the most natural reading of the statute. Congress unambiguously set out to punish anyone who "knowingly possesses, *or* knowingly accesses with intent to

> view, any ... computer disk ... or other material ... that contains an image of child pornography." 18 U.S.C. § 2252A(a)(5)(B) (emphasis added). Grammatically, the word "accesses" (the *actus reus* of the crime) is directed towards the repository containing child pornography, not the child pornography itself.

*Tagg*, 886 F.3d at 587-588 (emphasis in original).

Further, the evidence was sufficient to allow a rational finder of fact to reject Ammons' arguments and to conclude that he had accessed the sites in question with the intent to view child pornography. Though Ammons would have the Court focus entirely on a couple of excerpts from Agent Rankhorn's cross examination concerning "cache" and "pre-fetching," the evidence at trial was more extensive. Special Agent Amanda Rankhorn detailed the forensic review of approximately sixty-seven (67) pieces of digital evidence, identifying seven (7) items that contained evidence relevant to child pornography. [R. 125, Tr., (Vol. 2), at Page ID #: 1043] The images showed young girls engaged in sexually explicit conduct, most often with their legs spread wide apart and exposing their genitals. *Id.* at Page ID #: 890. Several of the images included the "omegle.com" logo. Omegle is a website that allows chatting with strangers either by text or video. *Id.* at Page ID #: 1046-47. Specifically, two hundred twenty (220) images of child pornography were extracted from the Chrome browser cache of hard drive #4797 (United States' Exhibit 81). [R. 125, Tr., (Vol. 2), at Page ID #: 1892] Images containing child pornography were saved onto a computer diskette and introduced as the United States' Sealed Exhibit 90. From Sealed Exhibit 90 the United States compiled a sampling of ten (10) files containing images of child pornography that were actually published to the jury as Sealed Exhibit 91 (contained in a red booklet). All ten (10) images in Sealed Exhibit 91 were located in the Chrome browser cache of hard drive #4797. *Id.* at Page ID #: 1048, 1052-1055] Based on Special Agent Rankhorn's examination of hard drive #4797, the user name for this hard drive was "damm0." *Id.* at Page ID #: 1044, 1051. Special Agent Rankhorn further testified that based

on the file data, all the images contained in Sealed Exhibit 91 were "created, accessed, [or] modified" between 8:09 a.m. and 8:41 a.m. Eastern Daylight Time ("EDT") on October 22, 2015. *Id.* at Page ID #: 1058-1059.

The United States also introduced the testimony of FPS Special Agent Brian Coyt and Special Agent Virginia MacHenry, who conducted Ammons' post-*Miranda* interview. During this interview, Ammons initially denied then later admitted viewing child pornography on computers in his residence. *Id.* at Page ID #: 875, 960-961. Ammons described some of the images in detail [*Id.* at Page ID #: 867, 954], giving information about where child pornography could be located on the internet [*Id.* at Page ID #: 875-877, 957-959], though he claimed he was not a "collector" of child pornography. *Id.* at Page ID #: 962. Ammons also provided some of his user names, which were variations of his first initial and last name with the numeral "0" replacing the letter "o." *Id.* at Page ID #: 862, 952.

Ammons told Special Agents Coyt and McHenry that he was the primary user of the computers in the home and that no one else in the home would be looking at child pornography [*Id.* at Page ID #: 860, 867, 951, 955]; that he had installed password-protected wireless routers just three or four months prior to the execution of the search warrant [*Id.* at Page ID #: 861, 951-952]; and that he routinely deleted his temporary files and internet browsing history [*Id.* at Page ID #: 862-863, 953]. Ammons described several websites he had visited that contained child pornography such as "chaturbate.com" (an "adult-type forum where you interact with people that are . . . nude. . .like a peep show . . ."), 4.chan.org and 8chan.org (websites where forums such as "BDSM" and "teens in stockings" were available for users to discuss and post child pornography), "kiddiegfs.com," and "mrvine.net" (a website where Ammons had seen an adult male having intercourse with a small child). [R. 125, Tr., (Vol 2), at Page ID #: 863-864, 874-

877, 951-954, 969] Initially, Ammons told the agents that he had not used "The Onion Router" network (or "Tor" for short) to access the dark web and search for child pornography, but later admitted "checking around" the dark web using Tor and viewing child pornography as part of his interest in the Jared Fogle child pornography case and other investigations. *Id.* at Page ID #: 874-876, 957-960, 967-968. Tor anonymizes the user's IP address so "it can't be tracked back to your specific location." *Id.* at Page ID #: 957-958. Per Special Agent Coyt, a person cannot enter these websites on a search engine like Google.com; a person would have to use a Tor network to intentionally access them. *Id.* at Page ID #: 967-68. During his post-*Miranda* interview, Ammons never told Special Agent Coyt and Special Agent MacHenry that he had accidentally stumbled upon child pornography when accessing these sites. *Id.* at Page ID #: 966-67.

To explain some of his incriminating statements, Ammons testified that he was threatened during his post-*Miranda* interview by Special Agent Coyt that if he did not confess, Agent Coyt would "tear [Ammons'] life apart and rip it to pieces. . ." [R. 126, Tr., (Vol. 3), at Page ID #: 1126-1127] He also gave a couple reasons for why he was surfing the internet, including the dark web, in areas that contained child pornography. First, he explained that he was a self-taught computer specialist who needed to know about things like Tor and the dark web in order to perform his job as an IT Specialist with his employer, QSR Automations ("QSR"). *Id.* at Page ID #: 1107-1108, 1159-1160. He also explained that he became interested in the Jared Fogle child pornography case and other criminal investigations. *Id.* at Page ID #: 967, 1108-09, 1117-1118.

The United States called three rebuttal witnesses. Special Agent Coyt denied making any threats against Ammons. *Id.* at Page ID #: 1201-1202. Andrew Sonntag, Chief Operating Officer of QSR, testified that there was no reason for Ammons to be doing any QSR-related work from

home, including researching Tor, the dark web, or illegal websites on behalf of QSR. *Id.* at Page ID #: 1208-1209. The United States also recalled Special Agent Rankhorn who described records located within the Chrome browser cache of hard drive #4797 for user "damm0" on October 22, 2015. The records included a visit to chaturbate.com around 8:00 a.m. EDT. *Id.* at Page ID # 1180. Also, at 8:08 a.m. EDT, a Google search query was typed in for the term "jblover," and a subsequent visit to jblover.org that continued till 8:41 a.m. EDT. *Id.* at Page ID #: 1180. Special Agent Rankhorn checked the cache files and located the URL of jblover.org, which included the title "Jailbait forum – Stickam Captures – Omegle Captures." *Id.* at Page ID #: 1180-1181. These records indicated visits to specific cache pages that further had links to other sites containing child pornography whose URLs then showed up in the cache, indicating that those links were clicked on and followed from the original jblover.org page. *Id.* at Page ID #: 1185-1186. These other links were for pages titled "Stickcam," "Jailbait videos," "Omegle captures." *Id.*

Ammons' main argument is that the evidence presented at trial did not rule out the possibility that Ammons never saw images of child pornography contained in Sealed Exhibits 90 and 91 nor accessed the websites from where they were pulled. Ammons argues that while the evidence may have established that it was "probable" that he accessed web sites containing images of child pornography found in his cache, it was also "possible" that the images were placed in cache by "operation of the Chrome browser without [Ammons] ever having accessed the sites or seeing the images." [R. 131, at p. 7] To support this contention, the Defendant points to the testimony of Special Agent Rankhorn when discussing the images contained in Sealed Exhibit 91 found in the cache of hard drive #4797. On cross, Special Agent Rankhorn testified that it was "possible" that images could be found in a browser's cache that the

individual using the browser had not actually viewed. [R. 125, Tr., (Vol. 2), at Page ID #: 1071-72] From this testimony, the Defendant concludes that while the United States' proof "may have established that it was probable that web pages found in cache were there because Defendant had clicked on links to those pages," this same proof "also established that it was 'possible' that they were placed there by the Chrome browser's 'pre-fetching' mechanism without [Ammons] having actually clicked on the link to those pages or visited them." [R. 131, at p. 7]

First, Defendant's argument ignores all the other evidence presented at trial regarding Ammons' accessing child pornography sites. Ammons admitted to the FBI agents that he viewed child pornography from his home computer, and he described some of it in detail. He claimed, however, he did so as part of his job with QSR – a claim his boss flatly refuted. He described for the agents various websites he had visited by searching the dark web using Tor. He also explained to the agents that he did not save any of the images and regularly deleted his browser history.

Further, Defendant's argument focuses on only one part of Special Agent Rankhorn's testimony, while ignoring the weight of evidence that provides greater context. The selected excerpt from Special Agent Rankhorn's testimony discusses a hypothetical dealing with cache. However, her other testimony provided insights into the images that were provided to the jury in Sealed Exhibit 91, a sampling of ten (10) of the two hundred twenty (220) images of child pornography captured in hard drive #4797. Specifically, this testimony provided the jury with evidence of how/what (specific searches for "jblover"), when (October 22, 2015 between 8:00 a.m. and 8:41 a.m. EDT), and who (user name "damm0") had accessed the images contained in Sealed Exhibit 91.

The evidence presented to the jury "need *not* remove every reasonable hypothesis except that of guilt." *Hughes*, 505 F.3d 592. (quoting *Stone*, 748 F.2d at 362) (emphasis in original). Here, the Defendant's argument is that because it is possible to fathom a scenario of innocence, Ammons could not have been found guilty by any rational fact finder. This is not the logical framework the Court applies to a motion for judgment of acquittal. Ammons' argument that he might not have actually seen the images of child pornography contained in Sealed Exhibits 90 and 91 is also unavailing. *See Tagg*, 886 F.3d at 587-588 (holding that merely accessing a child-pornography website with the intent to view illegal materials is itself a criminal act, "even if the person never viewed illegal child pornography"). There was sufficient evidence for the jury to conclude that Dennis Ammons (user name damm0) intentionally accessed child pornography sites on October 22, 2015 with the intent to view child pornography. And because the Court must give the United States "the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial," the Court draws the same inference from this evidence that the jury did – that Ammons, or his browser, did not happen upon these sites by accident. *Carter*, 355 F.3d 925. This was a criminal act, and the evidence presented at trial was sufficient for a rational factfinder to find that all the elements of the crime charged had been established. *Graham*, 622 F.3d at 448.

Accordingly, and with the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED** as follows:

1. Defendant Dennis Ammons' Motion and Supporting Memorandum for Judgment of Acquittal [**R. 117**; **R. 131**] are **DENIED**.

March 27, 2019

Claria Boom, District Judge
United States District Court

cc: Counsel of Record
United States Probation Office